UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SCOTT LAMARR,

Plaintiff,

-against-

UNITED STATES OF AMERICA,

Defendant.

**MEMORANDUM & ORDER**
**23-CV-01725 (NGG) (LKE)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Scott Lamarr ("Plaintiff") brings this action against Defendant United States of America ("Defendant") under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), 2671-2680 (the "FTCA"), alleging serious injuries as a result of a vehicle collision between Plaintiff and a United States Postal Service ("USPS") driver. (*See generally* Compl. (Dkt. 1).) Plaintiff seeks to recover damages for injuries he sustained under New York State's No-Fault Insurance Law, N.Y. Ins. Law § 5104(a) (the "No-Fault Law"). Pending before the court is Defendant's fully-briefed motion for summary judgment pursuant to Rule 56 of the Federal Rule of Civil Procedure on the issues of causation, as well as damages and "serious injury" under the No-Fault Law. (Def.'s Mot. for Summ. J. (Dkt. 53); Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mot.") (Dkt. 54); Pl.'s Mem. in Opp. to Mot. for Summ. J. ("Pl.'s Opp.") (Dkt. 59); Def.'s Reply in Supp. of Mot. for Summ. J. ("Def.'s Reply") (Dkt. 60).)

For the reasons explained below, Defendant's motion is GRANTED.

## I. BACKGROUND

The following facts are taken from Defendant's Local Rule 56.1 Statement (Rule 56.1 Statement ("Def.'s 56.1 St.") (Dkt. 55)), as well as Plaintiff's Opposition.[1]

### A. Factual Background

#### 1. The Initial Accident

On November 9, 2020, Plaintiff was operating a motor vehicle when the vehicle was hit by a vehicle operated by Jeongtae Kim ("Kim"), a USPS driver employed by Defendant (the "Accident"). (*See* Def.'s 56.1 St. ¶ 2.) The collision occurred when Plaintiff

---

[1] Typically, under Local Civil Rule 56.1, all parties file a 56.1 Statement, and the party in opposition submits a counterstatement to the movant's 56.1 Statement. *See* Local Civil Rule 56.1(b). Here, Plaintiff did not file his own 56.1 Statement or a Rule 56.1 counterstatement when filing his Opposition. (*See generally* Pl.'s Opp.) As such, Defendant argues that the court should admit all of the facts in its Rule 56.1 Statement, because Plaintiff did not comply with this Local Rule and thus none of the facts are genuinely disputed. (*See* Def.'s Reply at 2.) In support, Defendant cites *Groisman v. Feller*, 16-cv-1369 (CBA) (TAM), 2025 WL 553996, at *1 (E.D.N.Y. Jan. 22, 2025), in which the court concluded that, because the plaintiff had filed a "deficient statement" under Rule 56.1, the facts within the defendant's Rule 56.1 Statement were to be deemed admitted. (*See* Def.'s Reply at 2.) While Plaintiff's lack of submission may be procedurally improper, the court will not use that as an excuse to simply deem all of Defendant's facts admitted. The court "has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Recognizing the failure here, the court nonetheless exercises its "discretion to conduct an assiduous review of the record [to] consider what the parties have failed to point out in their Local Rule 56.1 Statements" and to determine whether there actually exist any genuine issues of material fact. *Wertzberger v. Weiss*, No. 22-CV-7822 (DLI)(PCG), 2026 WL 2923106, at *1 (E.D.N.Y. Sept. 29, 2026). In doing so, this court will view any disagreements as to a material fact that it finds in light most favorable to the non-movant. *See id.*

turned off Marcy Avenue in Brooklyn, New York onto South 3rd Street, where Kim was sitting in his "double parked" (*i.e.*, parked inside a moving lane) USPS vehicle. (*Id.* ¶¶ 2, 4.) As Kim began to pull out onto the street to begin driving again, the USPS vehicle's front bumper made contact with the right passenger door of Plaintiff's vehicle as he was heading westbound on South 3rd Street. (*Id.* ¶¶ 4-5.) At the time of the Accident, Plaintiff was driving approximately 15 miles per hour. (*Id.* ¶ 6.) Upon impact, Plaintiff jerked "[f]orward and backwards," (Lamarr Dep. Tr. (Dkt. 56-1) 77:7-17), but neither his back nor shoulders made physical contact with any parts of his vehicle, (*Id.*; Def.'s 56.1 St. ¶ 9-11). No ambulance was called and Plaintiff did not seek any medical attention that day. (*Id.* ¶¶ 20-21.)

On November 19, 2020—ten days after the Accident—Plaintiff sought medical care for this first time. He presented at CitiMedical Services, P.C. ("CitiMed"), complaining of neck and back pain. (*Id.* ¶¶ 22-23.) Plaintiff's then-treating physician, Olanrewaju Adeosun, M.D. ("Dr. Adeosun"), diagnosed him with "cervicalgia" (*i.e.*, neck pain), a "thoracic sprain/strain" (*i.e.*, back injury), and lower back pain. (*Id.* ¶¶ 24-26.) Dr. Adeosun ordered a Magnetic Resonance Imaging ("MRI") for Plaintiff's cervical, thoracic, and lumbosacral spine—the spine's upper, middle, and lower regions, respectively. (*Id.* ¶ 27.)

On November 30, 2020, Plaintiff underwent the MRI at CitiMed for all three regions (the "CitiMed MRIs"). (*Id.* ¶¶ 28-30.) The MRI revealed "multi-level disc herniations" at C4/5, C5/6, and C6/7[2] for the cervical spine, a "disc bulging" at the L2/3 and L3/4

[2] The human spine has three sections; from top to bottom, they are the cervical spine, the thoracic spine, and the lumbar spine. The cervical spine has 7 stacked bones, referred to as vertebrae "C1" through "C7," which run down the spine in serial order. *See* Cervical Spine, https://my.clevelandclinic.org/health/articles/22278-cervical-spine

levels and "broad-based herniation" at L4/5 for the lumbar spine, but "no disc herniations" for to the thoracic spine. (*Id.*) Since then, Plaintiff has not undergone any additional X-rays or MRIs for his neck or back. (Lamarr Dep. Tr. at 223:5-20.)

On December 1, 2020, Peter John Sansone, D.C. ordered an X-ray for Plaintiff, (CitiMed Records (Dkt. 56-9) at ECF p. 231), and, on December 8, 2020, Plaintiff underwent the X-ray for his cervical and lumbar spine (Def.'s 56.1 St. ¶¶ 32, 34). The X-ray revealed a "disc-osteophyte complex"[3] for his cervical spine and a "shallow dextrocurvature"[4] for his lumbar spine, though it did not reveal a particular cause of these conditions. (*Id.*) Plaintiff was subsequently given a referral for physical therapy for his back. (*Id.* ¶ 35.) During this period following the accident, Plaintiff did not take any time off work. (*Id.* ¶ 128.)

2. The Intervening Ice Incident

On December 17, 2020, while walking in Manhattan, Plaintiff was "hit on the head by chunks of ice that fell off the top of an office building" (the "Ice Incident"). (*Id.* ¶ 36.) Thereafter, Plaintiff "fell onto the sidewalk and hit his whole body hit the ground."

---

[https://perma.cc/2LFY-5HAX] (last visited November 19, 2026). The thoracic and lumbar spines also have numbered vertebrae, labeled beginning with "T1" or "L1," respectively. *See, e.g.*, Thoracic Spine, https://my.clevelandclinic.org/health/body/22460-thoracic-spine [https://perma.cc/U55D-JRM7] (last visited November 19, 2026).

[3] A disc-osteophyte complex is the development of bone spurs, which may be caused by aging, among other causes. Disc Osteophyte Complex, https://www.bonati.com/blog/treatment-disc-osteophyte-complex/ [https://perma.cc/DE4Y-WYTY] (last visited November 19, 2026).

[4] A Dextrocurvature is a curve of the spine to the right, curving in a backward "C" shape. Levoscoliosis & Dextroscoliosis, https://my.clevelandclinic.org/health/diseases/24193-levoscoliosis--dextroscoliosis [https://perma.cc/H4C9-CDPJ] (last visited November 19, 2026).

(*Id.* ¶ 37.) Plaintiff "was woken up by witnesses who dragged [him]" along the sidewalk to prevent him from being further hit and was subsequently transported to Bellevue Hospital by an ambulance. (*Id.* ¶¶ 38-39.) Over a span of four years following the Ice Incident (between December 2020 and August 2024), Plaintiff sought medical care from various providers, complaining of head pain, shoulder pain, and neck pain "post personal injury [occurring] on December 17, 2020." (*Id.* ¶¶ 42-44, 46-52, 58-60, 65-80.) These providers performed various medical procedures on him, including, among other things, acupuncture and chiropractic examinations, range of motion testing using a goniometer, and pain management treatments. (*Id.* ¶¶ 47, 50, 51.) Plaintiff's test results consequent to these procedures showed that he had suffered from sprains and strains of the cervical and lumbar spine, but that his range of motion was "all within normal limits." (*Id.* ¶¶ 47-48.) Only one test result attributed causation; according to Plaintiff's 2021 chiropractic examination reports, Plaintiff's injuries were reportedly caused by the Accident (not the Ice Incident), but the provider concluded that the range of motion for his lumbar spine was still "within normal limits." (Liberty Mutual Rep. (Dkt. 56-19) at 4.)

However, between 2021 and 2022, Plaintiff went to the Physical Medicine and Rehabilitation of New York clinic and sought treatment from Jean Paul Errol Toussaint, M.D. ("Dr. Toussaint"), a pain management physician, for personal injuries sustained from the Ice Incident. (Def.'s 56.1 St. ¶¶ 42-59.) According to the "physiatric evaluation" Dr. Toussaint completed, Plaintiff's chief complaints were of head injury, right shoulder pain, and neck pain attributable to the December 17, 2020 accident (*i.e.*, the Ice Incident). (Physiatric Evaluation (Dkt. 56-22) at ECF pp. 2-3.) Additionally, between approximately December 2020 and July 2023, Plaintiff underwent physical therapy and chiropractic treatment, both for his neck and back. (Def.'s 56.1 St. ¶¶ 60-61).

In 2023, Plaintiff stopped physical therapy and has not received any medical treatment for his lumbar spine since then. (*Id.* ¶ 77.)

3. Dr. Kreizman's Examination

On March 29, 2022, over 14 months after the Accident and 13 months after the Ice Incident, Plaintiff went to Pain and Rehabilitation Services ("PARS"), a pain management clinic, and sought medical care, which he received from Issac J. Kreizman, M.D. ("Dr. Kreizman"), a pain management physician, beginning on April 12, 2022. (*Id.* ¶¶ 62-64.) In evaluating Plaintiff's medical history, Dr. Kreizman reviewed Plaintiff's CitiMed MRIs. (Kreizman Dep. Tr. (Dkt. 56-13) at 95:12-25.) Dr. Kreizman did not review any other imaging taken after November 30, 2020, including the X-rays, because "no further imaging was necessary" for the purposes of treatment. (*Id.* at 95:18-96:19.)

Attempting to alleviate Plaintiff's pain, (*id.* at 54:14-16, 55:4-14), Dr. Kreizman administered "a lumbar interlaminar epidural steroid injection"[5] on April 12, 2022, (Def.'s 56.1 St. ¶ 65). However, because Plaintiff's pain did not improve, (Kreizman Dep. Tr. at 113:10-15), Dr. Kreizman met with Plaintiff again on April 26, 2022 and "performed a percutaneous lumbar discectomy," which is "a minimally invasive procedure involving a needle insertion," [6] (*id.* ¶¶ 68-69). According to Dr. Kreizman, "99 percent of the

---

[5] An epidural steroid injection is a common pain-management technique for those suffering from chronic pain in their lumbar region. *See* Lumbar Epidural Steroid Injection, https://my.clevelandclinic.org/health/treatments/22091-lumbar-epidural-steroid-injection [https://perma.cc/7RS6-HRTK] (last visited November 19, 2026).

[6] Specifically, a percutaneous discectomy is a medical procedure that removes portions of a herniated disc, the rubbery structure that sits between each vertebrae of the spinal column. The purpose of the procedure is to remove parts of the disc that are irritating the nerve, thereby relieving pain.

patients have an epidural injection prior to the discectomy." (Kreizman Dep. Tr. at 77:2-4.)

On December 9, 2024, four years following the Accident and after the commencement of litigation, Dr. Kreizman examined Plaintiff for a second time and prepared a narrative report for litigation purposes (the "Narrative Report"). (*Id.* at 136:19-139:12; Def.'s 56.1 St. ¶ 76.) At that examination, Dr. Kreizman performed both physical and imaging tests. (Narrative Rep. (Dkt. 56-15) at 2.) In drafting his report, Dr. Kreizman reviewed Plaintiff's PARS medical records, as well as the CitiMed MRIs. (Kreizman Dep. Tr. at 141:3-5; 141:16-25, 142:2-143:23.) Dr. Kreizman did not review any other external records, including Plaintiff's Bellevue Hospital records and Dr. Toussiant's "physiatric evaluation," both of which indicated that Plaintiff received treatment for his injuries sustained from the Ice Incident. In the Narrative Report, Dr. Kreizman found that Plaintiff exhibited "a decreased range of motion in his lumbar spine," and "had a positive slump test and a positive straight leg test."[7] (Def.'s 56.1 St. ¶ 109.) Dr. Kreizman ultimately concluded that Plaintiff's lower back injuries were caused by the Accident. (Narrative Rep. at 2.)

---

*See* Percutaneous Discectomy, https://www.treatingpain.com/treatments/percutaneous-discectomy/ [https://perma.cc/H6GZ-CVVU] (last visited November 19, 2026).

[7] A slump test is a test used to detect a patient's spinal pain by having the patient slump forward and slowly extend their knees. If the patient is unable to extend their knee due to pain, the test is considered positive. *See* Slump Test, https://www.physio-pedia.com/Slump_Test [https://perma.cc/4DFL-RTYD] (last visited November 19, 2026). A straight leg test is used to detect lumbar nerve root irritation. The healthcare provider slowly lifts the patient's leg in a fully extended position and continues to do so until the patient's symptoms of pain are replicated. When the test provokes a complaint that the patient experiences pain, the test is considered positive. Straight Leg Raise Test, *See* https://www.physio-pedia.com/Straight_Leg_Raise_Test [https://perma.cc/8WPN-ZCQ9] (last visited November 19, 2026).

However, at the time of the examinations, Dr. Kreizman was not aware of Plaintiff's prior medical history, which included Plaintiff being shot 7 times, with 1 bullet striking Plaintiff in the back, resulting in "surgery and physical therapy." (Def.'s 56.1 St. ¶ 116.)

4. Drs. Fischer's and Serina's Examinations

On June 18, 2024, Defendant's expert, Charla Fischer, M.D. ("Dr. Fischer"), conducted an orthopedic examination of Plaintiff, also for litigation purposes. (*Id.* ¶ 81-82.) Dr. Fischer tested Plaintiff's range of motion in his cervical spine, which revealed a range of motion slightly below average. (*Id.* ¶ 85.) Dr. Fisher also tested Plaintiff's range of motion in his lumbar range, which revealed that "he is more flexible than the average range of motion." (*Id.* ¶ 87.) As discussed below, Dr. Fischer found "no evidence of any acute trauma" to the lumbar spine, cervical spine, or thoracic spine, (*id.* ¶¶ 98-103), and concluded that the alleged conditions were a result of "age and pre-existing degeneration, not the Accident," (*id.* ¶¶ 101-06.)

On December 12, 2024, Elaine R. Serina, Ph.D. ("Dr. Serina"), an expert in mechanical engineering and biomechanics,[8] prepared an expert report for litigation purposes. (*See* Serina Rep. (Dkt. 58-1).) To prepare the report, Dr. Serina and Ms. Pedersen reviewed, among other things, the police accident report, the Motor Vehicle Accident Report, the Pleadings and Stipulations, Plaintiff's responses to Interrogatories, Plaintiff's deposition, photographs of Plaintiff's vehicles from the scene of the Accident, and Plaintiff's medical records. (*Id.* at 2-3.) As discussed below, the

[8] The report was also prepared by Laurel Pedersen, an expert in mechanical engineering and accident reconstruction. (*See* Serina Rep. at 1.) For simplicity and ease of analysis, the court refers to the report as being prepared by Dr. Serena, especially considering Dr. Serina was the expert deposed on this report. (*See generally* Serina Dep. Tr. (Dkt. 58-2).)

report concluded that a "low-speed sideswipe impact" would be "unlikely to cause structural damage to the tissues of [the cervical and lumbar] joints." (*Id.* at 16.)

5. Plaintiff's Work

At the time of the Accident, Plaintiff was employed as a fitness instructor at New York Sports Club ("NYSC"). (*Id.* ¶ 127.) Between 2020 and 2024, Plaintiff conducted hourly personal training sessions for five clients twice per week and independent fitness training. (*Id.* ¶ 130.) Between 2023 and 2024, Plaintiff additionally taught a total-body conditioning class twice a week and a core-conditioning class once a week at NYSC. (*Id.* ¶ 131-32.) Plaintiff exercises for one hour on all of his days off. (*Id.* ¶ 136.) Following the Accident, it is undisputed that Plaintiff can no longer do a "full squat and a full lunge," nor can he sit for long periods of time. (*Id.* ¶¶ 133-35.)

**B. Procedural Background**

On March 6, 2023, Plaintiff filed suit against Defendants Kim and USPS, alleging negligence. (*See generally* Compl. (Dkt. 1).) Because the underlying event involved a federal agent, Plaintiff brought the claim under the FTCA. (*See id.* ¶¶ 4, 8.) Plaintiff seeks monetary damages of $1,000,000. (*Id.* ¶ 10.) In his complaint, Plaintiff alleges that Defendant owed a duty to exercise reasonable care and that Defendant breached that duty when Kim (its employee) negligently collided with Plaintiff. (*Id.* ¶¶ 34-35.) On November 13, 2024, the parties stipulated to dismissal with prejudice of all claims against Defendants Kim and USPS, leaving just the claims against Defendant United States of America. (Nov. 13, 2024 Stip. (Dkt. 30) at 2.)

Neither party moved to dismiss under Fed. R. Civ. P. 12(b), and as such, the case proceeded to discovery, which closed on September 8, 2025. (*See* Joint Letter Dated 09/08/2025 (Dkt. 38)).

On August 3, 2026, Defendant filed for summary judgment. (*See* Def.'s Mot. for Summ. J. at 1.) Pursuant to the court's individual rules, all associated briefings were timely filed.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).[9] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *In re Kwok*, No. 25-2742-BK, 2026 WL 2881595, at *3 (2d Cir. Sep. 25, 2026) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The movant "bears the burden of establishing that no genuine issue of material fact exists." *Bustamante v. KIND, LLC*, 100 F.4th 419, 432 (2d Cir. 2024). "Once a movant has made that showing, the non-movant must set forth specific facts showing that there is a genuine issue for trial." *Id.* And "[c]onclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact." *Id.*

In considering a motion for summary judgment, the court "must review all of the evidence in the record . . . to determine whether

[9] When quoting cases, and unless otherwise noted, all citations, emphases, and quotation marks are omitted, and all alterations are adopted.

judgment as a matter of law is appropriate," drawing "all reasonable inferences in favor of the nonmoving party." *Porter v. Dartmouth-Hitchcock Med. Ctr.*, 92 F.4th 129, 147 (2d Cir. 2024). In doing so, however, the court "may not make credibility determinations or weigh the evidence," as those are jury functions. *Id.* Rather, the function of the court is "to determine whether, as to any material issue, a genuine factual dispute exists." *Id.*

**B. Rule 56.1**

Local Civil Rule 56.1 ("Rule 56.1") requires the movant to provide a list of "'material facts as to which the moving party contends there is no genuine issue to be tried.'" *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009) (quoting Local Civil Rule 56.1(a)). If the nonmovant contests those assertions, the nonmovant must respond to the movant's Rule 56.1 statement and "include, if necessary, a statement of the additional material facts that demonstrate a genuine issue for trial." *Id.* at 417-18. Importantly, "[a] nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible" and, in some circumstances, grant summary judgment. *Id.* at 418. However, "[t]he district court generally has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024). To that end, if a party fails to submit a responding statement, the court may exercise this "discretion to conduct an assiduous review of the record [to] consider what the parties have failed to point out in their Local Rule 56.1 Statements" and to determine whether there actually exist any genuine issues of material fact. *Wertzberger v. Weiss*, No. 22-CV-7822 (DLI)(PCG), 2026 WL 2923106, at *1 (E.D.N.Y. Sep. 29, 2026) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)). In doing so, this court will view any disagreements

as to a material fact that it finds in light most favorable to the non-movant. *Id.* at *1.

### C. FTCA

The FTCA provides that the United States is subject to tort liability for personal injuries "caused by the negligent or wrongful act or omission of an employee of [a federal agency who was] acting within the scope of his office or employment" in circumstances where "the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the [negligent] act or omission occurred." 28 U.S.C. § 2672. Under the FTCA, a claimant brings their state law tort claims against the Government as defendant, which the court analyzes following guidance from the state's highest court "because state law is the 'source of substantive liability under the FTCA.'" *Comba v. U.S.*, 535 F. Supp. 3d 97 (E.D.N.Y. 2021) (quoting *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012)).

### D. Applicable Law

The parties agree that New York State negligence law applies. (*See* Def.'s Mot. at 4; Pl.'s Opp. at 6.) "Under New York law, the elements of a negligence claim are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Bano v. U.S.*, 788 F. Supp. 3d 408, 422 (E.D.N.Y. 2025) (quoting *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F. 3d 209, 215 (2d Cir. 2002)).

Specifically, Plaintiff brings his claim under the No-Fault Law, which the parties agree governs this claim. (*See* Def.'s Mot. at 4; Pl.'s Opp. at 6.) Under that law, assuming a plaintiff meets the above negligence elements, he may recover monetary damages only for: (1) economic losses beyond the "basic economic loss" threshold of $50,000; *or* (2) non-economic losses, such as pain

and suffering, arising from a "serious injury." N.Y. Ins. Law §§ 5104(a)-(d).

## III. DISCUSSION

Defendant moves for summary judgment on three grounds: (1) the Accident did not substantially cause the alleged injuries, so the negligence elements are not met; or, alternatively, if those elements were met, Plaintiff (2) incurred only basic economic losses; and (3) did not suffer a "serious injury" as a result of the Accident, both of which would bar recovery under the No-Fault Law. (*See, e.g.*, Def.'s Mot. at 5, 6, 14.) The court finds that Defendant has met—and Plaintiff has not rebutted—its burden of proving there is no genuine dispute of material fact as to causation. Thus, summary judgment must be granted and the court need not reach the alternative grounds.

### A. Causation

Defendant argues that summary judgment must be granted because Plaintiff cannot prove causation, a required element for a negligence claim. The court agrees. Plaintiff has failed to raise a genuine dispute as to causation. Summary judgment therefore must be granted.

Defendant argues that injuries to Plaintiff's cervical and lumbar spine "are attributable to degenerative, preexisting conditions, not the Accident." (Def.'s Mot. at 15.) Defendant points out that, immediately following the Accident, Plaintiff exited his vehicle and was able to walk without the need of medical assistance. (*Id.*) Plaintiff did not call an ambulance, and he did not seek treatment until ten days later. (*Id.*) Defendant further points out that, according to Dr. Fischer, Plaintiff's medical imaging revealed that the disc bulging and herniations "are consistent with chronic degenerative conditions, not acute trauma." (*Id.* at 16.)

Alternatively, Defendant argues that any alleged cervical injuries were "caused by an intervening event—the Ice [Incident]—not the Accident." (*Id.* at 17.) Defendant points out that, after being "struck on the head by chunks of ice that fell from a skyscraper," Plaintiff fell onto the sidewalk and hit his whole body on the ground, and that, subsequent to the Ice Incident, Plaintiff's chief complaints to his doctors were of neck pain, which he himself attributed to the Ice Incident. (*Id.* at 17-18). Defendant thus argues that "[a]ny alleged injuries . . . that Plaintiff claims to have suffered [were], therefore, proximately caused by the Ice [Incident], not the Accident." (*Id.* at 18.)

Last, Defendant argues that Dr. Kreizman's opinion attributing Plaintiff's injuries to the Accident "is not supported by any analysis" and instead is "based on what Plaintiff told Dr. Kreizman and nothing else." (*Id.* at 19.) Defendant points out that "Dr. Kreizman did not review any Accident-related documents." (*Id.*) Instead, Dr. Kreizman only reviewed "his own records . . . and Plaintiff's CitiMed MRIs." (*Id.*) Further, Defendant argues that Dr. Kreizman "made no effort to learn if there were, or to rule out, other potentially contributing or intervening causes of Plaintiff's alleged lumbar injuries." (*Id.*)

In opposition, Plaintiff first offers his CitiMed records, including his initial evaluation ten days following the Accident, as evidence showing that the "objective physical findings" and "the diagnosis rendered" (*i.e.*, Plaintiff's neck pain, thoracic sprain/strain, and low back pain) were "causally related to the [Accident]." (Pl.'s Opp. at 9.) Plaintiff notes that his CitiMed MRIs (taken before the Ice Incident) showed that he suffered from dextroscoliosis, had disc bulging, and had "moderate central stenosis [in some parts of his lumbar spine] and mild to moderate central stenosis" in others. (*Id.* at 10.)

In reply, Defendant argues that "any purported injuries to Plaintiff's cervical and lumbar spine are degenerative and were not

caused by the Accident." (Def.'s Reply at 9.) To support this argument, Defendant points out that Plaintiff is attributing only the injuries to his lumbar spine, but not to his cervical spine, to the Accident. (*Id.*) Defendant further contends that Plaintiff "does not make any attempt to respond to Defendant's myriad of arguments as to why Dr. Kreizman's causation opinion is conclusory." (*Id.*) In contrast, Defendant highlights that Dr. Fischer's conclusions, unlike Dr. Kreizman's, rested on an independent review of Plaintiff's MRIs and X-rays, which showed that Plaintiff's injuries were "develop[ed] over the years and are the result of degeneration, not acute trauma." (*Id.* at 10.) Defendant concludes that, based on Defendant's biomedical evidence, the Accident "could not have caused Plaintiff's alleged cervical or lumbar spine injuries." (*Id.*)

At the summary judgment stage, if a defendant offers "persuasive evidence" indicating that a plaintiff's injuries were caused by a preexisting condition or an alternative cause, the plaintiff bears the burden to present evidence responding to defendant's assertion of a lack of causation. *Smith v. Gray*, 21-cv-2035, 2022 WL 1418973, at *1 (2d Cir. May 5, 2022) ("*Gray*"); *see also Pommells v. Perez*, 4 N.Y.3d 566, 580 (2005) ("[W]ith persuasive evidence that plaintiff's alleged pain and injuries were related to a preexisting condition, plaintiff had the burden to come forward with evidence addressing defendant's claimed lack of causation."). In doing so, a plaintiff is required to present "evidence sufficient to support a finding, not only that the alleged injury is serious . . . but also that the injury was proximately caused by the accident at issue." *Welch v. Ayala*, 19-cv-3455 (NRB), 2023 WL 5387551, at *8 (S.D.N.Y. Aug. 22, 2023). Such evidence must be sufficient enough to allow "a rational jury [to] conclude that the accident, and not the preexisting condition, was the cause of [the plaintiff's] claimed injuries." *Brusso v. Imbeault*, 699 F. Supp. 2d 567,

585 (W.D.N.Y. 2010). Thus, absent evidence addressing the alternative causes, a defendant is entitled to summary judgment. *See Gray*, 2022 WL 1418973, at *1.

Here, as Defendant indicates, the Ice Incident and Plaintiff's preexisting degenerative condition are alternative causes that break the causal chain between the Accident and Plaintiff's injuries. Therefore, as in *Pommels*, Plaintiff must address these alternative causes and their effects on his diagnosis, because doing so would allow a rational jury to conclude that his serious injuries to his cervical, thoracic, or lumbar spine were caused by the Accident, rather than the alternative causes.

1. Thoracic Injuries

With respect to Plaintiff's thoracic injuries, Defendant has met its burden showing Plaintiff's injuries were not causally linked to the Accident by submitting evidence showing that Plaintiff's CitiMed MRIs (taken after the Accident) revealed no disc herniations to his thoracic spine. (Def.'s 56.1 St. ¶ 29.) Defendant further points to Dr. Fischer's assessment, which stated that Plaintiff had no herniations in his thoracic spine and thus no thoracic injuries caused by the Accident. (*Id.* ¶¶ 102-03, Def.'s Mot. at 16 n.2.)

To raise a genuine issue of material fact, Plaintiff submits his CitiMed records as evidence showing that he was diagnosed by Dr. Adeosun with a "[t]horacic sprain/strain," as well as a "[b]ulging of annulus fibrosis of the T8/9 and T10/11 discs." (Pl.'s Opp. at 9-10.)

However, the court finds Plaintiff's evidence insufficient to raise a triable issue. "While there was evidence of bulging discs and possible herniations for" Plaintiff, the court is not persuaded that the medical evidence raises a genuine dispute "that these were caused by [a] low impact, sideswipe accident and not the result of the general aging process." *Seales v. U.S.*, No. 15-cv-6969 (CLP), 2019 WL 7753451, at *27 (E.D.N.Y. Oct. 21, 2019); *see*

*also Bucci v. Kempinski*, 273 A.D.2d 333, 333 (2d Dep't 2000) (finding plaintiff's MRI "indicating that he exhibited a slight posterior disc bulge" insufficient to "causally relate[] the bulge to the accident"). Plaintiff provides no other evidence indicating that he was even injured in the thoracic spine after the Accident, let alone that the Accident *caused* that injury. Accordingly, Defendant is entitled to summary judgment on this point.

2. Cervical Injuries

Whether Plaintiff's cervical injuries were caused by the Accident is more seriously contested, but the court finds that Plaintiff has not raised a genuine dispute of material fact. Defendant met its burden by offering persuasive evidence from Dr. Fischer, who concluded, based on Plaintiff's X-rays for his cervical spine, that Plaintiff suffered from a "disc-osteophyte complex," a condition that "develop[s] . . . over many years and [is] another finding of longstanding disc degeneration." (Def.'s 56.1 St. ¶ 33.)

The burden thus shifts to Plaintiff to "come forward with evidence addressing defendant's claimed lack of causation" as to his cervical injuries. *Pommells*, 4 N.Y.3d at 580. He has failed to do so here. Plaintiff indicates that, at his initial visit to Dr. Adeosun before the Ice Incident, he was diagnosed with cervicalgia (neck pain), (Def.'s 56.1 St. ¶¶ 23-24); that his MRI results showed "multi-level disc herniations at C4/5, C5/6, and C6/7," (*Id.* ¶ 28); and, finally, that Dr. Kreizman's report shows that he sustained serious injuries from the Accident, (Pl.'s Opp. at 17).

The New York Court of Appeals addressed this issue in *Pommells*. In that case, three plaintiffs, like Plaintiff here, claimed they had sustained serious injuries arising from motor vehicle accidents. *Pommells*, 4 N.Y.3d 566 at 572. Although the plaintiffs in *Pommells* presented evidence showing that they sustained a "serious injury," they failed to refute the defendants' evidence that preexisting degenerative conditions could have caused those injuries, as opposed to the motor vehicle accidents. *Id.* at 580. The Court

of Appeals explained that, "even where there is objective medical proof" supporting a finding of injury, if a plaintiff fails to rebut a claim that "additional contributory factors interrupt the chain of causation between the accident and the claimed injury," summary judgment is appropriate. *Id.* at 572.

Like in *Pommells*, summary judgment is appropriate here because Plaintiff has "failed to rebut th[e] evidence sufficiently [enough] to raise an issue of fact" as to whether his injuries were causally related to the Accident, rather than the Ice Incident or general degeneration. *Pommells*, 4 N.Y.3d at 579; *see also Welch*, 2023 WL 5387551, at *12 (granting summary judgment on causation because the plaintiff failed to rebut defendant's showing of additional contributory factors that interrupted the chain of causation). Most importantly, Dr. Kreizman did not attribute Plaintiff's *cervical* injuries to the Accident, but rather concluded that it was Plaintiff's *lumbar* spine that was injured as a result of the Accident. (*See* Pl.'s Opp. at 15.) Plaintiff arguably thus cannot use Dr. Kreizman's findings as evidence here at all. *See Kwok*, 2026 WL 2881595, at *3 ("Factual disputes that are irrelevant . . . will not be counted" in determining summary judgment.). Further, similar to *Pommells*, while Plaintiff provided evidence of disc herniations, his "submission left wholly unanswered the question whether the claimed symptoms diagnosed by [Dr. Kreizman] were caused by the" Accident, because he does not meaningfully refute Defendant's experts' reports establishing that his injuries to his cervical spine were actually a result of his degeneration or injuries sustained from Ice Incident. *Pommells*, 4 N.Y.3d at 575.

While it is true that Dr. Kreizman reviewed Plaintiff's MRIs taken *before* the Ice Incident, Plaintiff nevertheless does not indicate at any point whether Dr. Kreizman was aware of the Ice Incident when performing his analysis, and, if so, whether the Ice Incident

played any role in forming his medical conclusion as to the cervical spine. In fact, in his deposition, Dr. Kreizman stated that, when reaching out to Plaintiff after the final examination supporting the Narrative Report, Plaintiff "mention[ed for the first time] that he had ice hit the top portion of his spine" and that "it seemed like it was the cervical area that was struck." (Kreizman Dep. Tr. at 172:2-6.) Indeed, Plaintiff's "physiatric evaluation" confirms this by showing that Plaintiff's chief complaints were of head injury, shoulder pain, and neck pain, and that those injuries were a result of the Ice Incident, rather than the Accident. (Physiatric Evaluation at ECF p. 2.) The "physiatric evaluation" report neither mentions the Accident, nor attributes any of Plaintiff's injuries to a source other than the Ice Incident. Dr. Toussaint, who conducted the "physiatric evaluation," concluded that Plaintiff suffered from "posttraumatic headache, right shoulder internal derangement, [and] myofascial derangement of the cervical spine with disc displacement" relating to "personal injury [that] occurred on December 17, 2020" (*i.e.*, the Ice Incident). (*Id.* at ECF p. 4.) Despite this, Plaintiff does not provide any explanation as to why Dr. Kreizman chose not to review the "physiatric evaluation," his X-rays, or Bellevue medical records when forming his medical opinion.

Thus, Defendant persuasively offers evidence suggesting that a "competing potential cause," like the Ice Incident, caused Plaintiff's cervical injuries. *Brutton v. U.S.*, 687 F. App'x 56, 58 (2d Cir. 2017) (affirming judgment that a separate accident constituted an alternative cause for the plaintiff's injuries). Just as in *Pommels*, summary judgment is appropriate here because Plaintiff failed to rebut that evidence.

3. Lumbar Injuries

The same is true as to Plaintiff's lumbar injuries; Defendant meets its burden to show that those injuries were not causally linked to the Accident for similar reasons, and Plaintiff does not rebut that

evidence. As discussed above, Defendant argues that Dr. Kreizman's opinion is conclusory because it is "based on what Plaintiff told Dr. Kreizman and nothing else," (Def.'s Mot. at 19), given that he did not rule out any potential contributing or intervening causes for Plaintiff's lumbar injuries or look at any other medical records of Plaintiff's aside from the CitiMed MRIs and Plaintiff's PARS records, (Kreizman Dep. Tr. at 141:9-144:4.) In other words, while Dr. Kreizman did rely on things other than Plaintiff's representations, he did *not* review important documents like Plaintiff's X-rays, which showed no evidence of fractures, (*see* Def.'s 56.1 St. ¶ 34), or his Bellevue Hospital records, which included the fact that he was admitted for injuries sustained from the Ice Incident, (*see id.* ¶ 44).

Again, the case law is instructive here. In *Gray*, the Second Circuit heard a negligence case arising out of an automobile accident that involved a plaintiff who, like Plaintiff here, alleged that he had sustained serious lumbar and cervical injuries under the No-Fault Law. *Gray*, 2022 WL 1418973, at *1-2. The plaintiff had been involved in multiple automobile accidents prior to the accident at issue, and one subsequent to it. *Id.* at *1. The defendant, like Defendant here, offered evidence based on the plaintiff's MRIs that showed that his injuries, like Plaintiff's injuries here, were a result of degeneration. *Id.* at *2. While the plaintiff offered evidence from his doctor stating that his injuries were "causally related to the accident," as done by Dr. Kreizman here, the Second Circuit found "such a conclusory statement by a medical expert [to be] insufficient," because the plaintiff's expert "made no effort to explain the causality conclusion or rebut the notion that Plaintiff's injuries were due to a preexisting condition." *Id.* Accordingly, the Second Circuit affirmed summary judgment. *Id.*

Here, too, Defendant marshals persuasive evidence showing that Plaintiff's injuries were caused by other contributory factors—

namely, degeneration and injuries sustained from the Ice Incident. First, Dr. Serina[10] found that a "low-speed side-swipe impact" is unlikely to cause damage to Plaintiff's lumbar spine. (Serina Rep. at 16.) Second, Dr. Fischer,[11] who conducted an independent review of Plaintiff's MRIs and X-rays, found no evidence of any acute trauma to his lumbar spine after the Accident. (Fischer Rep. (Dkt. 57-1) at 14.) Rather, Dr. Fischer indicated that Plaintiff's "disc bulging with herniations [is] seen in long standing wear and tear of aging and are not due to an acute event (i.e., they could not be due to the accident)." (*Id.* at 13.) Like the experts in *Gray*, Dr. Fischer concluded that Plaintiff's "claimed [lumbar] injuries are the result of age and pre-

---

[10] Plaintiff argues that because Dr. Serina's report was not authenticated as required by the Fed. R. Evid. 901(a), the report is inadmissible hearsay. (*See* Pl.'s Opp. at 2.) Plaintiff thus urges the court to disregard the report. (*Id.*) It is true that Dr. Serina's report does not have any language relating to perjury. (*See generally* Serina Rep.) However, "subsequent verification or reaffirmation of an unsworn expert's report, either by affidavit or deposition, allows the court to consider the unsworn expert's report on a motion for summary judgment." *Richardson v. Corr. Med. Care, Inc.*, No. 22-210, 2023 WL 3490904, at *2 (2d Cir. May 17, 2023). Here, in a sworn deposition, (*see* Serina Dep. Tr. (Dkt. 58-2)), Dr. Serina talked at length about the report at issue, directly referencing it and acknowledging her conclusions made therein, (*see, e.g., id.* at 7:5-22, 9:5-15, 35:3-16). Accordingly, Dr. Serina's report, while unsworn, has been authenticated through sworn testimony, in which she reaffirmed her opinions. (*See, e.g., id.* at 64:18-24). The court can thus "consider [her] unsworn expert's report on [this] motion for summary judgment." *Richardson*, 2023 WL 3490904, at *2.

[11] Plaintiff argues that Dr. Fischer's report, like Dr. Serina's, is inadmissible hearsay because it is not authenticated. (Pl.'s Opp. at 2.) Similarly, the court denies Plaintiff's request to disregard Dr. Fischer's report. Unlike Dr. Serina, Dr. Fischer's report does, in fact, have the following language: "I, Charla R. Fischer, M.D. . . . do hereby affirm under the penalty of perjury that the statements contained herein are true and accurate." (Fischer Rep. at 15.) The court finds that Dr. Fischer's export report "substantially compl[ies]" with Section 1746. *Batista v. U.S.*, 792 F. App'x 134 (Mem), 135 (2d Cir. 2020) ("the plain language of Section 1746 itself requires only substantial compliance.").

existing degeneration, and are not the result of the accident." (*Id.* at 13.) Thus, just as in *Gray*, this evidence constitutes "persuasive evidence that Plaintiff's [injury was] related to a preexisting condition" and not the Accident. 2022 WL 1418973, at *1.

The burden thus shifts to Plaintiff to raise a genuine dispute of material fact as to his lumbar injuries. Again, Plaintiff has failed to do so. Plaintiff relies on the testimony of Dr. Kreizman here, too. (*See* Pl.'s Opp. at 13-15.) While Dr. Kreizman concluded that Plaintiff's lumbar injuries were causally related to the Accident, (*see id.* at 13), he also noted in his deposition that the Ice Incident "would not change [his] opinion of [Plaintiff's] lumbar injury," (Kreizman Dep. Tr. at 172:7-14.) In other words, Dr. Kreizman asserted that he would have concluded that Plaintiff's lumbar injuries were caused by the Accident, rather than the Ice Incident, even if he had known about the latter at the time, regardless of what the medical records indicated. "To the extent that these statements are . . . not entirely conclusory," the court finds Dr. Kreizman's findings here to be "insufficient to preclude summary judgment" because they do not "specifically address[], let alone rebut[], Defendant['s] experts' opinions that Plaintiff's injuries were due to" another cause, such as the Ice Incident or a degenerative condition. *Espinal Lora v. Cowman Intermodal Grp., LLC*, No. 1:23-cv-009013 (MKV), 2025 WL 2774180, at *6 (S.D.N.Y. Sept. 29, 2025).

Similar to *Gray*, the court finds Plaintiff's proffered evidence here insufficient because, while the evidence from Dr. Kreizman indicates in name that Plaintiff's injures were "causally related" to the Accident, Plaintiff "completely ignores the presence" of the panoply of other evidence, such as the X-rays, the Bellevue Hospital Records, the "physiatric evaluation," and the reports from Drs. Serina and Fischer, all of "which were sufficient to establish Defendant's *prima facie* case against causation." *Gray*, 2022 WL 1418973, at *2. Indeed, at no point in his report or deposition

did Dr. Kreizman indicate why the Ice Incident would not have changed his opinions, or how he was able to determine this without knowing what the impact of the Ice Incident had been. Moreover, while Dr. Kreizman would not have changed his opinion as to Plaintiff's lumbar injuries, that rigidity is solely predicated on his subjective "understanding of [Plaintiff's] injury," not on any objective medical evidence that accounted for the Ice Incident, and thus is conclusory. (Kreizman Dep. Tr. at 172:12, 173:5-7.) Perhaps even more egregiously, Dr. Kreizman's opinions are "further undermined by his failure to consider medical records" related to Plaintiff being shot seven times, with one bullet striking his back. *Manzi v. Davey Tree Expert Co.*, 977 F. Supp. 2d 150, 160 (E.D.N.Y. 2013) (finding a doctor's failure to review the plaintiff's complete medical records indicated that the doctor's testimony was insufficient to rebut the assertion that there was no genuine issue of triable fact); *see also Lhotan v. Cahill*, No. 22-cv-7681 (VB), 2025 WL 2051625, at *10 (S.D.N.Y. July 22, 2025) (granting summary judgment because plaintiff's doctor's failed to address that the basis for attributing plaintiff's injury to the accident included "other possibilities evidenced in the record"). Dr. Kreizman did not "opine on whether Plaintiff's current injuries were superimposed" on injuries resulting from these other causes. *Manzi*, 977 F. Supp. 2d at 160. His opinions therefore cannot be used to determine whether the Accident was, in reality, the cause of Plaintiff's injuries.

In fact, no "viable evidence" proffered by Plaintiff "explain[s] in any manner the relationship of the . . . similar injuries" or even addresses the possibility that his lumbar injuries could have been caused by either the Ice Incident or degeneration. *Evans v. U.S.*, 978 F. Supp. 2d 148, 173 (E.D.N.Y. 2013). Thus, the court finds that, absent admissible evidence explaining that the injury was "caused by the subject accident, and not by other possible causes evidenced in the record," Dr. Kreizman's opinions attributing

Plaintiff's injuries to the Accident is conjectural and thus "insufficient to support a finding that such a causal link exists." *Carter v. Full Serv., Inc.*, 29 A.D.3d 342, 344 (1st Dep't 2006).

In sum, the court finds that Plaintiff did not meet his burden by showing a genuine dispute of material fact as to whether his injuries were proximately caused by the Accident. There is no genuine dispute of material fact, then, that the elements of negligence were not met. The court therefore grants summary judgment to Defendant.

### B. No-Fault Law Claims

Because the court grants summary judgment on causation grounds (and thus because the elements of negligence are not met), it need not reach the other claims Defendant brings. *See Marin v. Paynter*, 838 F. Supp. 3d 281, 296 (E.D.N.Y. 2026) ("When summary judgment is granted for one party on a dispositive issue, further issues alleged by that party need not be addressed." (citing *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 511 n.8 (2d Cir. 1994)).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED and the complaint is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
November 20, 2026

s/Nicholas G. Garaufis, USDJ
NICHOLAS G. GARAUFIS
United States District Judge